# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

NOVEMBER TERM, 1889.

52   1
f57e  78

### THE HOWARD SAVINGS INSTITUTION v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK.

Where an unconstitutional assessment for city improvements had been set aside in chancery, the decree declaring that the city had no estate in or lien upon the premises in question—*Held*, that such decree did not debar the city from imposing a second assessment on said lands by virtue of a new act of legislation.

On case certified for advisory opinion. The following is case so certified, viz. :

On February 7th, 1873, an assessment for paving Ogden street, in the city of Newark, was ratified by the common council, including an assessment of $260.45 on property situated on Ogden street, owned by Elias Marsh. This assessment was made under the city charter, requiring the whole amount of the costs and expenses of paving to be assessed upon the owners of lands upon the line of the street, without regard to benefits conferred.

1

The lands assessed were, on the 22d of April, 1874, sold by the comptroller of the city of Newark, and struck off to the city for the term of fifty years, and a certificate of sale made to the city. The Howard Savings Institution, who held a mortgage upon the premises, became the owners of the property, by purchase at foreclosure sale, on July 9th, 1878. On July 14th, 1879, the Howard Savings Institution, being then in possession of the premises and claiming to own the same, filed a bill in the Court of Chancery against The Mayor and Common Council of the City of Newark, to quiet title to the premises in question (*pro ut* the said bill of complaint). To this bill the city of Newark filed an answer, setting up its title or claim to the premises under the assessment and the sale thereunder (*pro ut* the same), and on April 30th, 1880, a final decree was made in the cause, reciting that the Chancellor was of the opinion that the assessment was unconstitutional, illegal and void, and thereupon adjudging and decreeing "that the said defendant, The Mayor and Common Council of the City of Newark, has no estate, interest or right in or encumbrance upon the following described lands of the said complainant," describing the lands in question, and also decreeing the payment of costs by the defendant to the complainant (*pro ut* the said decree).

The commissioners of adjustment under the Martin act, by their report No. 14, have assessed these premises for $200 as a settlement and adjustment of the above assessment for paving Ogden street, and upon objection by the present owner of the premises, Ann Gargan, that by reason of the decree in the above suit, the right of the city to a re-assessment for the expenses of said paving has been extinguished.

I hereby certify to the Supreme Court for its advisory opinion, pursuant to the statute in such case made and provided, the question whether, under this decree, the right to a re-assessment by the city has been extinguished.

In report No. 17 of the same commissioners, they have assessed property belonging to the Howard Savings Institution, situated on South Sixth street, for the sum of $900,

being the adjustment of an assessment for grading South Sixth street, made March 6th, 1874, under the city charter above referred to. By decree made April 30th, 1880, on a bill filed by the Howard Savings Institution in 1879 against The Mayor and Common Council of the City of Newark, to quiet their title to these premises, and in which an answer was filed setting up the assessment, it was also declared that the Chancellor being of the opinion that the assessment was unconstitutional, illegal and void, and it was adjudged and decreed "that the said defendant, The Mayor and Common Council of Newark, has no estate, interest or right in or encumbrance upon the following described premises," being the premises in question, and decree for costs was also made (*pro ut* the bill, answer and decree). In reference to this assessment, I also certify to the Supreme Court the same question for its advisory opinion.

In report No. 17 of the commissioners, an assessment was also made by them upon property belonging to the said institution, situated on North Sixth street, as the adjustment of an assessment made May 7th, 1875, upon the premises, for the grading, curbing and flagging of South Sixth street under the provision of the charter above referred to ; on this assessment a sale for non-payment was made to the city on June 24th, 1875, for the term of fifty years. On January 13th, 1881, the savings institution, being then the owner of the premises, filed a bill to quiet its title thereto against The Mayor and Common Council of the City of Newark, to which an answer was filed, setting up a claim of title under the assessment and sale, and on July 31st, 1881, a decree was made that the said claim was not valid, and "adjudging and decreeing that in the said lands and premises [describing them], or any part thereof, the said defendants have, by virtue of the aforesaid claims or any of them or any part thereof, no estate, interest, rights nor any encumbrance thereon, and that as to all the said lands and premises, so far as relates to any claim thereon by or on behalf of the said defendants, by reason of the aforesaid premises or any part thereof, the title of the

complainant in and to the same and every part thereof is: hereby determined, fixed and settled and declared to be good," also decreeing costs to complainant (*pro ut* the pleadings and decree).

I also certify to the Supreme Court for its advisory opinion the question whether, under a decree in this form, the right of the city to a re-assessment has been extinguished.

No question is to be raised as to the right of the adjustment commissioners to make the re-assessment, provided the property remained liable to any assessment after the entry of the decrees, and no objection is made that the property was not specially benefited by the improvement and originally liable to a proper assessment, the object of this certificate being to obtain the opinion of the court as to the liability of these lands or any of them to any re-assessment after the decrees.

The pleadings and decrees in the cases are to be considered as part of the certificate, and if required, to be annexed thereto on the printed case.

DAVID A. DEPUE, *J.*

Argued at June Term, 1889, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL·and SCUDDER.

For the plaintiff, *John R. Emery.*

For the city, *Joseph Coult.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The facts before us, in brief, are these, viz.: One Elias Marsh was the owner of a lot in Newark, which, in 1873, was assessed for part of the expense of paving a street; that assessment was unconstitutional, but notwithstanding that the premises were thereunder sold by the comptroller, and the city became the purchaser for a term of fifty years. Afterwards the Howard Savings Institution, becoming the purchasers of the property, filed, under the statute,

their bill in chancery against the city of Newark to quiet their title to the premises in question. This bill was answered, the city setting up their claim to the premises by force of the assessment and sale above mentioned. In 1880 a decree was rendered, declaring that the assessment and proceedings were unconstitutional, and that the city "has," in its language, "no estate, interest or right in or encumbrance upon the" tract of land now in question. The commissioners of adjustment, under the authority of the act of March 30th, 1886, have assessed these premises at a certain amount.

It is now insisted that the original assessment having been annulled by the Court of Chancery, as above stated, the right of the city to a re-assessment has been extinguished, and that, consequently, the last assessment is not possessed of any legality.

The argument appears to be thus, that the Court of Chancery has conclusively declared that the city of Newark had "no estate, interest in, or right in or encumbrance upon these premises," and that such decree is conclusive between the municipality and the owner of this property.

But we think this argument is obviously without force.

At the time of the decree the city had "no estate, interest or right in or encumbrance upon" these premises, and none such is now pretended or sought to be enforced. A right to obtain an encumbrance is a very different thing from an existing lien. What the decree dealt with was then present estates and encumbrances; it declared that none such existed; but it neither did nor could adjudge that none such could be afterwards acquired.

It is insisted in behalf of the plaintiff that, in these chancery proceedings, if the city possessed the right to acquire liens on the property in the future, it was bound, in conformity with the rules of equity practice, to set up such capacity in its answer. But this is a plain fallacy, for such capacity was not in issue, and was possessed of no quality tending to elucidate or affect what was in issue. The matter to be decided, regarding it in its widest extent, was the existence of any existing

estate or encumbrance in or upon the premises, and the question, whether or not the city could, by any course of law, obtain a future lien or estate, was not *sub judice.* A statement in the answer to that effect would have been altogether irrelevant; it would not have appertained in the remotest degree to the subject of inquiry, and could not have been judicially noticed. When the Chancellor declared in his decree that the city had no estate in or encumbrance upon this property, he did not declare that the city could never in the future acquire such interest; such latter declaration, if made, would have been extrajudicial and a mere nullity.

But the claim of the plaintiff must go beyond even this exorbitant bound. The chancery proceedings were in 1879; the present assessment became an encumbrance upon these premises under the act of 1886. The contention, therefore, must be, not only that the city, in its answer in the chancery suit, was called upon to set out and claim its right to acquire liens on these lands by virtue of then existing laws, but was likewise bound to anticipate the acquisition of a possible franchise possessed of such an efficacy by force of legislation which there is no reason to believe was then in contemplation. If the result in chancery had the effect claimed, it would be equivalent to a decree declaring that the legislature should not pass a law providing for the assessment of property in a legal mode as a substitute for a previous assessment that had proved nugatory. Such a contention is destitute of all legal basis.

In our opinion, the right of the city to a re-assessment in neither of the cases exhibited in the certificate of the Circuit judge has been extinguished.