SEROPHINE FOUNTAIN

*v.*

THE MAYOR AND COMMON COUNCIL OF THE CITY OF
NEWARK.

[Decided May 7th, 1898. Filed January 4th, 1899.]

Under the law of 1886 (*P. L. of 1886 p. 149*), known as the Martin act,
providing for the collection and settlement of arrearages of unpaid taxes and
assessments in cities and imposing a lien for such arrearages, it is competent
for a city to levy an assessment for improvements made prior to the passage
of the act, even though an assessment for the same improvements had been
made before the act was passed, and a sale thereunder had been adjudged
invalid and set aside, as that decree applied only to the estate claimed under
such sale, and the chancery court had no power in that suit to adjudge that
the municipality could not thereafter make a new assessment and thereby
acquire an estate in the premises.

Heard on bill and answer.

The bill is filed under the act providing for suits in the court
of chancery to quiet title, by Serophine Fountain against the
mayor and common council of the city of Newark, and its
object is to have declared to be void a certificate of sale of land
owned by complainant, held by the city of Newark, founded on
the lien of an assessment made under what is known as the
Martin act. *P. L. of 1886 p. 149.*

The bill sets out that there was an assessment for street im-
provements made in the year 1873 by the city of Newark, upon
certain premises then owned by one John Fountain, which

premises included those now belonging to the complainant, and under that assessment a sale took place and the city became the purchaser for a term of years of the whole tract, and that afterwards John Fountain brought a suit in the court of chancery to have that assessment declared null and void, and that a decree was made therein on the 29th of January, 1878, by this court, declaring the invalidity of that assessment, and that the city of Newark had

"no estate or interest in or encumbrance on said parcel of land or any part thereof under said assessment or the lien thereof, or said sale, or said certificate of sale, or any of the proceedings on or under said assessment, and that the said complainant holds the said tract or parcel of land and premises free from said assessment and the proceedings for the enforcement thereof;"

that, subsequently, under the Martin act, a new assessment, founded on the same basis as that of 1873, was made upon the same premises, and a certain sum was apportioned to the parcel now owned by the complainant and duly affirmed by the court; that a sale had taken place under the new assessment and the city had become the purchaser. And the contention of the complainant is that this last assessment under the Martin act is invalid.

*Mr. William H. Francis*, for the complainant.

*Mr. Frederick T. Johnson*, for the defendant.

PITNEY, V. C.

This case has been elaborately argued on both sides, but I do not deem it necessary to discuss the questions argued, for the reason that I think the case as presented is thoroughly covered by authority.

The sale under the assessment of 1873 was undoubtedly set aside by this court upon the authority of the *Agens Case*, decided in 1874 and reported in *8 Vr. 415*. Subsequently, the legislature passed the Martin act, and the constitutionality of that act and the validity of assessments made under it, founded

Fountain v. Newark.

on street improvements made before its enactment, assessments for which had been declared void by the proper judicial tribunals, has been considered by the courts and authoritatively determined in favor of the assessments. I refer to *In re Commissioners of Elizabeth, 20 Vr. 488; Protestant Foster Home* v. *Newark, 23 Vr. 138,* and *Howard Savings Institution* v. *City of Newark, 23 Vr. 1.* The last-cited case is precisely in point. The decree of the court of chancery there set up seems to have been substantially in the same language and to the same effect as that here relied upon.

But if, upon a careful comparison, the present decree is found to be broader than that made in the case last cited, I think it will not help the complainant. For it is perfectly clear upon principle, as shown by the reasoning of the late Chief-Justice Beasley, in *23 Vr. 5,* and of Mr. Justice Garrison, in *23 Vr. 141,* that it is quite incompetent for the court of chancery, in a suit to quiet title of the character in question, to declare that the municipality cannot, by any subsequent proceeding or legislation, acquire a lien by reason of facts in existence before the commencement of the suit in which the decree of nullity is made.

The chief-justice (*23 Vr. 5*) says: "At the time of the decree the city had ' no estate, interest or right in or encumbrance upon ' these premises, and none such is now pretended or sought to be enforced. A right to obtain an encumbrance is a very different thing from an existing lien. What the decree dealt with was then present estates and encumbrances; it declared that none such existed, but it neither did nor could adjudge that none such could be afterwards acquired."

And Mr. Justice Garrison (*23 Vr. 141*) says: " The essentials of that jurisdiction are that a public improvement has been made; that an assessment therefor has been made and imposed, or attempted so to be, and that payment thereof has not been had. Where these elements co-exist, the authority of the commissioners to proceed is assured without regard to the invalidity of the legislation under which the assessment was made. The nullification of an invalid assessment, whether for inherent defects or because it rests upon unconstitutional legislation, must not be

Johnson v. Johnson R. R. Signal Co.

confounded with the discharge of the land from its liability to contribution. The matter of assessment is legislative; the question of liability is not. The basis of all municipal legislation of this class, as well as that of the fundamental right out of which it springs, is the value imparted to the land by the improvement. Hence, the liability of the land to pay the assessment arises as an incident to the improvement, and does not depend upon the validity of the legislative methods provided for its enforcement. If no such legislation be in existence, or, what is the same thing, if supposed legislation proves to be unconstitutional and void, the liability remains in the form of the responsibility of the landowner to future legislative action looking to the enforcement of contribution. The mode in which this contribution shall be apportioned and exacted is, it is true, with certain limitations, at the will of the legislature, but legislative power does not create the liability it enforces any more than it does the limitations it obeys. Hence, it follows that the partial or total failure of the legislative scheme leaves the question of liability untouched."

In this reasoning I fully concur. The decree must be in favor of the defendant.